Case 4:21-cv-00022   Document 27   Filed on 06/10/21 in TXSD   Page 1 of 5

United States District Court
Southern District of Texas
**ENTERED**
June 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOWARD AND DIAN DUNCAN, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-00022 |
| | § | |
| GEOVERA SPECIALTY INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

Before me is Plaintiffs' Motion to Compel Appraisal and Abatement. Dkt. 9. Having reviewed the briefing submitted by both parties, heard oral argument, and considered the relevant law, **I GRANT** the motion for the reasons set forth below.[1]

## BACKGROUND

This lawsuit arises from damages to the residence of Plaintiffs Howard and Dian Duncan (collectively, the "Duncans") allegedly caused by leaking pipes. At the time of the alleged leak, the Duncan family home was insured by Defendant GeoVera Specialty Insurance Company ("GeoVera"). The policy provides a dwelling limit of $185,000, subject to a $1,850 deductible. After the Duncans submitted an insurance claim in October 2018, GeoVera issued a $5,262 payment to the Duncans. Dissatisfied with that amount, the Duncans filed the instant lawsuit on December 2, 2020, in Harris County Civil Court at Law No. 3. GeoVera timely removed the lawsuit to federal court on January 5, 2021.

---

[1] A motion to compel appraisal is a non-dispositive motion, so a magistrate judge can issue an order instead of a memorandum and recommendation. See *PB Prop. Holdings, LLC v. Auto-Owners Ins. Co.*, No. 16-CV-1748-WJM-STV, 2017 WL 7726696, at *1 (D. Colo. Jan. 26, 2017) ("Plaintiff's motion to compel appraisal and stay litigation pending that appraisal is a nondispositive motion under Rule 72(a)."); *Kesic v. Am. Family Mut. Ins. Co.*, No. 2:15-CV-411, 2016 WL 10770865, at *3 (N.D. Ind. June 24, 2016) (A motion to compel appraisal "is nondispositive, so this court can resolve the motion" by order instead of memorandum and recommendation.).

Also on January 5, 2021, the Duncans sent a letter to GeoVera invoking appraisal in this matter. The relevant insurance policy contains the following appraisal provision:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written demand from the other and notify the other of the appraiser's name and contact information. If the appraisers cannot agree on the amount of loss or the actual cash value in accord with this Condition, the two appraisers will choose a competent and impartial umpire. If the appraisers cannot agree upon an umpire within 15 days, you and we shall jointly ask a judge of a court of record in the judicial district where the "residence premises" is located to choose an umpire. Neither you nor we may assign the right to demand appraisal to anyone.

Dkt. 12-1 at 45.

On February 4, 2021, GeoVera sent the Duncans a letter in response to the request for an appraisal. That letter explained that GeoVera's research had unearthed three previous water damage claims due to leaking pipes at the Duncan residence. Asserting "that the current damage claimed by Mr. Duncan is notably and remarkably similar to the damage claimed by [Mr. Duncan] for damage from the referenced multiple, prior insurance claims," GeoVera informed the Duncans that the insurance company did "not agree that appraisal is appropriate to address damages associated with the current claim." Dkt. 12-2 at 4–5. GeoVera elaborated:

> The seriousness of the causation and coverage issues arising from this claim reasonably renders the appraisal process, for this claim and at this time, a waste of both Mr. Duncan and GeoVera's time and resources.

*Id.* at 5. Because of GeoVera's unwillingness to move forward with appraisal, the Duncans have filed a motion to compel appraisal, requesting that the pending litigation be abated until the conclusion of the appraisal process.

## ANALYSIS

"[A]ppraisal is a contractually agreed process for resolving a *disagreement* between the insurance carrier and the policyholder about the *amount* of a loss under an insurance policy." Brendan K. McBride et. al., *Insurance Appraisal in Texas and Its Place in Coverage Litigation*, 50 ST. MARY'S L.J. 405, 408 (2019). "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Today, appraisal clauses are included in most homeowners, automobile, and property insurance policies in the State of Texas. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814 (Tex. 2019). Given the prevalence of appraisal clauses, it should come as no surprise that there is a strong public policy in favor of enforcing appraisal clauses. Indeed, the Texas Supreme Court has expressly held that, "[l]ike any other contractual provision, appraisal clauses should be enforced." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009). Stated another way, a "trial court has no discretion to deny [an] appraisal." *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002). *See also Johnson*, 290 S.W.3d at 888 ("While trial courts have some discretion as to the timing of an appraisal, they have no discretion to ignore a valid appraisal clause entirely.").

Despite this strong presumption in favor of enforcing appraisal clauses, GeoVera asks me to hold off on ordering appraisal in the present case because it maintains there are serious questions as to whether the most recent plumbing leaks caused any damage to the Duncan family home. But GeoVera "cannot avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Id.* at 893. The Texas Supreme Court's opinion in *Johnson* is directly on point. In *Johnson*, the insurance company, just like GeoVera here, refused to participate in appraisal because it believed that the parties' dispute hinged on causation instead of the amount of loss. Ordering the appraisal to

proceed, the Texas high court recognized that causation is inherent in every appraisal, but also acknowledged the importance and necessity of enforcing the appraisal process. *See id.* at 891–893. Because "the scope of appraisal is damages, not liability," the Texas Supreme Court explained that the appraisal process requires "appraisers to decide the 'amount of loss,' not to construe the policy or decide whether the insurer should pay." *Id.* at 890. The end result is that the causation issues will not be determined by the appraisal, but rather will be addressed by the district court in due course. *See id.* at 892 ("[W]hen different causes are alleged for a single injury to property, causation is a liability question for the courts.").

In a case strikingly similar to the present case, the Beaumont Court of Appeals considered whether an appraisal should proceed despite a dispute concerning causation. *See In re S. Ins. Co.*, No. 09-11-00022-CV, 2011 WL 846205 (Tex. App.—Beaumont Mar. 10, 2011, no pet.). The Court of Appeals held that *Johnson* required the appraisal to go forward, but observed that the appraisal's conclusions as to causation would not be binding:

> *Johnson* favors the appraisal process even on issues that would not bind the parties. . . . The parties dispute causation. [The insurance company] contends that the damage to [the insured's] home is the result of long term repeated leakage, and [the insured] contends the damage was caused by winds during Hurricane Ike. Nevertheless, following the Supreme Court's decision in *Johnson*, we conclude that under the circumstances the appraisal should be determined as an initial matter and the parties may then litigate causation questions.

*Id.* at *1. That same rationale applies here.

In accordance with the express contractual language of the homeowners policy at issue, an appraisal shall take place to determine the amount of loss. *See Barbara Techs*, 589 S.W.3d at 814 ("Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim."). At the same time, it is imperative that the parties keep in mind that the liability determination—which includes a detailed causation analysis—is outside

4

the province of the appraisers, and will be left to the district court to ultimately decide. *See Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888) (An appraisal clause "binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts.").

## CONCLUSION

For the reasons identified above, Plaintiffs' Motion to Compel Appraisal and Abatement (Dkt. 9) is **GRANTED**.[2] Plaintiffs' claim shall be submitted to the appraisal process as required by the applicable insurance policy. This case is **ABATED** until such time as the parties advise the Court that the appraisal is complete.

SIGNED this 10th day of June 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] GeoVera has also objected to moving forward with an appraisal until a Proof of Loss signed by the insured is provided. At oral argument, the Duncans agreed to produce such a Proof of Loss. To make sure there is no ambiguity, I expressly order that a Proof of Loss signed by the insured be provided before the appraisal process begins.